# GEORGE G. LENNIG

*v.*

## OCEAN CITY ASSOCIATION.

1. Defendants laid out a large tract of land in lots, and made a map thereof, exhibiting a plot marked "Camp-Ground," whereon, from time to time, camp-meetings and other religious assemblages were held. The object of the enterprise of the association (which was of a religious character, and under the auspices of the Methodist denomination), was to furnish to religious people a place of summer resort and residence, where they could have religious advantages and be surrounded by religious influences. The plot contained a large building in the centre, called "The Auditorium," where the most of the meetings convened. The complainant bought a lot fronting this plot. Different parts of the plot were annually leased by defendants to persons attending camp-meetings, who erected tents thereon, to live in, which remained during the summer and were then removed.—*Held,* that the court would not, at complainant's instance, restrain defendants from leasing any part of the plot to persons to erect thereon small cottages for greater convenience and comfort while attending the camp meetings; and that complainant is entitled to no advantage from a map, whereon the plot is marked "Park," which map was made and filed after he bought his property.

2. If land be dedicated to the public for a special use, and the erection of buildings thereon will the better adapt the premises to such particular use, the erection of the buildings would be no injury to adjacent property-owners, for which they would be entitled to any redress or against which they would be entitled to relief.

Bill for injunction. On final hearing on pleadings and proofs.

*Messrs. Leaming & Black,* for complainant.

*Mr. D. J. Pancoast,* for defendants.

THE CHANCELLOR.

The complainant purchased a lot of land of the defendants in Ocean City, which is located upon Peck's Island, in the county of Cape May, on the 11th of June, 1880. The island is bounded on the northeast by the ocean, and on the northwest

by Peck's bay. The streets on the association's property are parallel to each other and run northeasterly and southeasterly, and are crossed by the avenues at right angles thereto. The streets cross the island. The complainant's lot was described in his deed from the association to him as being numbered 698 in Section A. on the plan of lots of the association, and as being of the dimensions of one hundred and five feet on Sixth street, and fifty feet wide on Wesley avenue, and, of that width, extending from that avenue to a street fifteen feet wide. Between Fifth and Sixth streets, which adjoin each other, there is laid down on the map a plot extending the whole length of those streets (the entire width of the space laid off in lots on the map), and crossed by the several avenues except Central avenue. It is, therefore, in five blocks. Upon the middle one are the words "Camp-Ground." The bill states that the association has, upon numerous occasions, both publicly and privately, announced that the plot lying between Fifth and Sixth streets and extending from the ocean (on the east) to the bay (on the west) was dedicated to public use, and was forever to remain an open tract of land, free from buildings or other obstructions, except the auditorium building situated in the middle thereof; that at a public auction sale of lots laid down on the map, held by the association May 26th, 1880, when lots adjoining the camp-ground were offered for sale and bids therefor solicited from the public, the president of the association, Rev. William B. Wood, made the public announcement that the plot lying between Fifth and Sixth streets and extending from the sea to the bay, was dedicated to the public as a park, and was to be forever kept open and free from buildings and other obstructions, except the auditorium in the middle thereof, that the ocean breezes might freely circulate over it and the ocean view remain open and unobstructed. It further states that the association then announced that the lots adjoining that plot were more valuable than other lots in that locality, from the fact that the park was always to remain open and free from buildings, and the ocean breezes were to be allowed to circulate freely over it—from ocean to bay—and the ocean view to remain open and unobstructed. It alleges that

similar statements were made at another like sale of lots held by the association on the 22d of June following. It states that the complainant bought his lot at the May sale, and bid more for it because of the before-mentioned representations, and the fact that it had become a matter of common repute that the park or camp-ground had been dedicated to public use, and was to remain forever open and unobstructed. He now complains that the association proposes to lease parts of the camp-ground to persons who will build cottages thereon, and this suit is brought to restrain it from so doing, and from otherwise appropriating " the said park or camp-ground " to its own exclusive use or to the exclusive use of others. The complainant insists that the association has no right to put any buildings except an auditorium upon the plot. The answer denies all the equity of the bill.

The complainant has failed to establish the truth of the allegations of the bill as to the representations made at the sales. He indeed produces seven witnesses who swear that the president made the statements in their hearing, but, on the other hand, the president swears, with equal distinctness and positiveness, that he did not make them, and he is supported by eight other witnesses (among them the auctioneer), who were present at the sale, and whose opportunities for hearing such an announcement, if made, were as good as those of the complainant's witnesses. It is quite probable that at the sale there was talk on the part of the president, in commendation of the property, as to the advantages of lots on Fifth and Sixth streets from their location, their adjacency to the camp-meeting ground, with the incidental advantages of light, air and view—such talk as is, in common speech, termed " dealing talk." There is no evidence upon which reliance can be placed that the association ever authorized the president to make any such announcement or declaration. There is no resolution to that effect, nor any proof of any, except that one of the complainant's witnesses testifies that the managers agreed with lot-owners that the space in question should be left without buildings, and should not be sold as lots, but be left open for purposes of air and ornamentation, and that they instructed the president to announce at the sale that the space was

not to be sold or built upon, and that hence the lots facing upon it would be more desirable and valuable. But there is so much evidence to the contrary that this too must be regarded as not established. By the evidence, on the part of the defendant, it appears that what was announced by the president was that the strip of land was reserved for camp-meeting purposes. The association was of a religious character, and under the auspices of the Methodist denomination. The object of the enterprise was to furnish to religious people a place of summer resort and residence, where they would have religious advantages and be surrounded by religious influences. The location of a camp-ground was very naturally among the earliest acts of the association. By the first annual report (put in evidence by the complainant), which was made in October, 1880, and published in 1881, it is stated that the camp-ground block extends from the meadow to the ocean; and further that the space allotted to the encampment was five hundred feet wide from the thoroughfare to the ocean, with plenty of tenting ground, and that it was contemplated to have all the appointments desirable to render the camp-meeting a real feast to the thousands who might congregate there for Christian worship; that those coming to tent with them would have every possible facility that would contribute to their comfort; that, besides the regular services of the encampment, there would be temperance conventions, anniversaries, and other Christian and philanthropic convocations, fully occupying the season and making it memorable in interest and profit, and that no pains would be spared to give to Ocean City a series of religious privileges equal to those of other resorts of kindred character. It appears very clearly that the intention of the association has been at all times to reserve the plot in question, for the purposes just indicated, for camp-meetings and other religious and philanthropic assemblies, and that, while it intended to devote the plot to those purposes, it never intended to dedicate it to general public use as a park or open space for ventilation, prospect or ornament.

If the map be regarded as evidence of dedication of the plot to public use, that use is special for holding camp-meetings

there. The complainant does not allege that the defendants propose to divert it from that use, but he complains that in such use the defendants intend to use it in a manner different from that in which such grounds were generally used at the time when he bought his lot. At that time the persons who resorted to that place to reside upon the ground during the camp-meeting season, dwelt in tents which were erected there. It is now proposed, for the greater convenience of such persons as wish to attend the meetings, to substitute for tents small cottages to be built by the owners upon the camp-ground, upon land to be leased to them by the association. The objection made by the complainant to this plan is, that such buildings will remain permanently upon the ground while the tents would not be erected until at or near the beginning of the season, and would be removed at or near the end thereof. But the dedication of the land for camp-meeting purposes would not in itself preclude the use of it in any particular way consistent with the object. It surely would admit of the use of it in the most convenient and desirable way, and the complainant would have no ground of complaint so long as it was not diverted from the use to which it was devoted by the dedication. By the plan proposed, the purposes to which it is claimed that the land was dedicated would manifestly be promoted. The complainant, having failed to establish the fact that the association agreed that no building except an auditorium should ever be erected upon it, is left without any ground of complaint. An agreement not to build upon the ground such cottages as are now contemplated, is not to be implied from a mere stipulation that the ground shall be devoted to camp-meeting purposes. The evidence does not establish such a state of facts as to estop the company from erecting buildings upon the plot, the better to adapt it to the purposes of a camp-meeting ground. The right of the complainant to the relief which he seeks in this case must be clear to warrant the court in granting it. Considering all the circumstances, it seems quite probable that what is claimed to be a dedication, was in fact merely a location and reservation from sale of a convenient plot for camp-meetings, as in a different community a plot might be

Importers and Traders Bank *v.* Littell.

laid down on the map for a ground for athletic games or a race-course, or, in the establishment of a community of religious habits and inclinations, land might be reserved for a church edifice. If land be dedicated to the public for a special use, and the erection of buildings thereon will the better adapt the premises to such particular use, the erection of the buildings would be no injury to adjacent property-owners for which they would be entitled to any redress or against which they would be entitled to relief.

It may be added that the complainant can derive no advantage from the map filed by the association in 1883, upon which each end of the plot is marked "park" and the middle "auditorium." That map was made and filed after the complainant bought his property, and while those who purchased lots described expressly as laid down on that map would have rights under it, those who bought before it was made can have none.

The bill will be dismissed, with costs.